UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HUGH WYATT,

                               Plaintiff,                      11 Civ. 4954 (PKC)

       -against-

                                                                        MEMORANDUM
                                                                          AND
                                                                          ORDER

INNER CITY BROADCASTING CORPORATION,
INNER CITY MEDIA CORPORATION, and ICBC
BROADCAST HOLDINGS, INC.,

                               Defendants.

-----------------------------------------------------------x
P. KEVIN CASTEL, District Judge:

        Plaintiff Hugh Wyatt, proceeding pro se, brings this action against Inner City Broadcasting Corporation ("Inner City"), Inner City Media Corporation ("Inner City Media"), and ICBC Broadcast Holdings Inc. ("Broadcast Holdings"), alleging that defendants violated multiple state and federal laws, including section 17 of the Securities Act of 1933, 15 U.S.C. § 77q; section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b); Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5; and the civil enforcement provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).[1]  Plaintiff seeks monetary damages and injunctive relief, including the appointment of a receiver.  Defendants jointly move to dismiss the Amended Complaint pursuant to Rule 12(b)(1), Fed. R. Civ. P., and Rule 12(b)(6), Fed. R. Civ. P.  (Docket # 16.)  For the reasons set forth below, the claims against Inner City are dismissed.

---

[1] I have liberally construed plaintiff's claims asserted under "rule 10(b)5 of the SEC under the Securities Exchange Act of 1934" as asserting claims under sections 10(b) of the Exchange Act and SEC Rule 10b–5.  See Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009) (complaints filed by pro se plaintiffs must be liberally construed).

PROCEDURAL HISTORY AND THE AUTOMATIC STAY

Plaintiff filed the Complaint and then a motion, which the Court deemed to be a motion for a preliminary injunction. (Docket # 1, 2.) On August 2, 2011, the Court held a hearing on the motion for a preliminary injunction. At the hearing, plaintiff filed an Amended Complaint in open court. (Docket # 13.) After hearing the parties, the Court denied plaintiff's application for injunctive relief and permitted defendants to file a motion to dismiss the Amended Complaint. (8/2/11 Tr.) Defendants filed the motion on August 10, 2011. (Docket # 16.)

By letter dated August 23, 2011, defendants notified the Court that involuntary Chapter 11 bankruptcy petitions were filed against Inner City Media and Broadcast Holdings in the United States Bankruptcy Court for the Southern District of New York. (Letter dated Aug. 23, 2011 at 1.) Inner City is the parent corporation of Inner City Media and Broadcast Holdings. (Letter dated Aug. 23, 2011 at 1.) The petitions were filed on August 19, 2011, before the motion to dismiss was fully briefed. (Letter dated Aug. 23, 2011 at 1.) No bankruptcy petition was filed against or by the parent corporation, Inner City. (Letter dated Aug. 23, 2011 at 1.) On August 25, 2011, defendants filed a reply brief. (Docket # 24.)

The filing of an involuntary bankruptcy petition triggers an automatic stay. 11 U.S.C. § 362(a). The stay is "applicable to all entities" of "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor." 11 U.S.C. § 362(a); see also Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998) (noting that the automatic stay provision applies to actions against debtors). Here, Inner City is not a debtor. Therefore, the action is stayed as to defendants Inner City Media and Broadcast Holdings but not Inner City. Accordingly, this Memorandum and Order is directed solely to Inner City. See

Thule AB v. Advanced Accessory Holdings Corp., 2010 WL 1838894, at *1 (S.D.N.Y. May 4, 2010) (deciding a jointly filed motion to dismiss solely as to the claims against the defendant who was not subject to the automatic stay).

FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint. For the purposes of Inner City's 12(b)(6) motion, all non-conclusory factual allegations of the non-movant are accepted as true, Iqbal v. Ashcroft, 129 S. Ct. 1937, 1949-50 (2009), and all reasonable inferences are drawn in favor of the non-movant. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

Plaintiff is a shareholder in Inner City, a broadcasting company that "owns or has been involved in the ownership of" various radio stations and the Apollo Theater. (Am. Compl. ¶¶ 1, 5, 7.) According to plaintiff, Inner City and its subsidiaries have $230 million in outstanding debt. (Am. Compl. ¶ 10.) The Amended Complaint indicates that the outstanding debt arose, at least in part, from bank loans issued by Goldman Sachs and GE Capital. (Am. Compl. ¶¶ 9, 11.) Earvin "Magic" Johnson Enterprises ("Magic Johnson Enterprises") and Ron Burkle's Yucaipa Companies ("Yucaipa Companies") plan to purchase the outstanding debt pursuant to a proposed agreement (the "Debt Purchase Agreement"). (Am. Compl. ¶¶ 7, 10.) Inner City is a party to the Debt Purchase Agreement. (Am. Compl. ¶ 10.) If the Debt Purchase Agreement is consummated, the ownership of the debt will then be transferred to Fortress Investments ("Fortress"), Yucaipa Companies and Magic Johnson Enterprises. (Am. Compl. ¶ 11.) "The terms of the debt buyout will . . . amount to associated debt being bought for 25 cents on the dollar."[2] (Am. Compl. ¶ 10.)

---

[2] The nature of the "associated debt" is unclear.

The Amended Complaint makes a variety of factual allegations that primarily relate to his rights as a shareholder in Inner City.  For example, plaintiff alleges that "Inner City has refused to provide [him] with any information regarding the" Debt Purchase Agreement.  (Am. Compl. ¶ 14.)  He also alleges that Inner City has refused to inform him whether Inner City will seek the approval of its disinterested directors and shareholder before consummating the Debt Purchase Agreement.  (Am. Compl. ¶ 14.)  Inner City has also failed to hold stockholder meetings or issue "financial documents for the past five years."  (Am. Compl. ¶ 12.)  It has also refused to comply with a court order, issue by the New York State Supreme Court, requiring Inner City to release certain documents.  (Am. Compl. ¶ 13.)

Plaintiff also asserts a RICO claim and alleges that "[d]efendants operated their [business] enterprise . . . for the purpose of enriching the family of Percy E. Sutton through transactions . . . [that] violated state and federal criminal laws . . . ."  (Am. Compl. ¶ 8.)  This includes violating federal laws prohibiting mail fraud, bank fraud and the interstate transportation of stolen property.  (Am. Compl. ¶ 8.)  He also alleges that "[t]he fraudulent conduct involved in the proposed transfer of debt and equity to Fortress is in violation of section 17 of the Securities Act of 1933 and rule 10(b)5 of the SEC under the Securities Exchange Act of 1934."  (Am. Compl. ¶ 11.)

Other allegations in the Amended Complaint relate to a Federal Communications Commission ("FCC") license issued to Inner City.  (Am. Compl. ¶ 6.)  The Amended Complaint alleges that by allowing Goldman Sachs and "General Electric" to "own[ ] the entire equity interest of [Inner City]," it has violated "the licensing requirements of the FCC."  (Am. Compl. ¶ 11.)

LEGAL STANDARD

Rule 8(a)(2), Fed. R. Civ. P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (ellipsis in original).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient to raise a right to relief above the speculative level.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Achcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50.  The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal conclusion couched as a factual allegation.  Id.  Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment.  See Int'l Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995).

Rule 9(b), Fed. R. Civ. P., requires that allegations of fraud be pled with particularity. To satisfy this requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000) (quoting Shields v. Citytrust Bancrop, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)) (quotation marks omitted). In addition, the Private Securities Litigation Reform Act of 1995 requires a private litigant to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA also imposes a heightened scienter requirement that requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

When deciding a motion to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., a district court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007). The plaintiff has the burden to demonstrate that it has standing to bring a claim, and "[e]ach element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Here, "[b]ecause standing is challenged . . . on the basis of the pleadings, [the Court must] accept as true all material allegations of the complaint, and must construe the complaint in favor of the

complaining party." Carver, 621 F.3d at 225 (quoting W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008)).  "At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Warth v. Seldin, 422 U.S. 490, 501 (1975).

SUBJECT MATTER JURISDICTION AND STANDING

Inner City argues that plaintiff's claims must be dismissed for lack of subject matter jurisdiction.  (Defs. Mem. at 9-16.)  According to Inner City, plaintiff's claims do not invoke federal-question jurisdiction and plaintiff does not have Article III standing to assert his claims.  (Defs. Mem. at 9-16.)  I must decide whether I have subject matter jurisdiction before I can decide the Rule 12(b)(6) motions.  See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

"Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case." Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869, 2877 (2010) (citation and internal quotation omitted).  Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (discussing 28 U.S.C. § 1331 and stating that "[t]his provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law . . . .").  District courts also "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

States . . . ."³  28 U.S.C. § 1332(a).  In a civil action, where a district court has original jurisdiction, the court may exercise supplemental jurisdiction over plaintiff's pendent state law claims.  See 28 U.S.C. § 1367(a).

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.' "  Carver, 621 F.3d at 225 (quoting Warth, 422 U.S. at 498).  "The [s]tanding doctrine determines 'whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art. III,' and is therefore 'entitled to have the court decide the merits of the dispute or of particular issues.' "  Amnesty Intern. USA v. Clapper, 638 F.3d 118, 131 (2d Cir. 2011) (quoting Warth, 422 U.S. at 498) (internal citation omitted).  There are three Article III standing requirements: (1) the plaintiff must have personally suffered an injury-in-fact, i.e., an invasion of a judicially cognizable interest which is concrete and particularized as well as actual or imminent, rather than conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct at issue such that the injury is fairly traceable to the challenged conduct; and (3) the injury must be likely to be redressed by a favorable decision.  Lujan, 504 U.S. at 560–61; Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

Here, plaintiff asserts claims under RICO, the Securities Act of 1933, and the Securities Exchange Act of 1934—all federal laws that grant this Court federal question jurisdiction to adjudicate these claims.  See 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."); 15 U.S.C. § 77v(a) ("The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and

---

[3] Here, there is no diversity of citizenship between the parties because Inner City is a New York corporation with its principal place of business in New York and plaintiff is a New York resident.  (Am. Compl. ¶¶ 1-2.)  Thus, for this Court to exercise jurisdiction over plaintiff's federal claims, there must be federal question jurisdiction.

violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts . . . ."); 15 U.S.C. § 78aa (granting "[t]he district courts of the United States . . . exclusive jurisdiction [over] violations of [the Exchange Act of 1934] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act of 1934] or the rules and regulations thereunder."). Although plaintiff argues that this Court lacks federal question jurisdiction because plaintiff has not stated a viable claim for relief under any federal statute, the issue of whether a statute applies to the alleged conduct is a merits question, which is a separate question apart from the issue of subject matter jurisdiction.[4] See Morrison, 130 S. Ct. at 2877 ("But to ask what conduct [the Act] reaches is to ask what conduct [the Act] prohibits, which is a merits question.").

        Inner City's argument that plaintiff lacks constitutional standing to assert his securities law claims is without merit. Construing the Amended Complaint liberally, it alleges that Inner City's allegedly fraudulent and criminal conduct, committed in violation of RICO and federal securities laws, caused the value of his stock to decrease. This is sufficient to confer constitutional standing. See Lujan, 504 U.S. at 560–61. Therefore, this Court has subject matter jurisdiction to hear plaintiff's claims.

        Inner City cites to Chan v. Mui, 1995 WL 373318, at *2 (S.D.N.Y. 1995), for the proposition that a plaintiff who asserts claims on behalf of a corporation cannot satisfy prudential considerations of the standing doctrine. Quoting Chan, it argues that prudential considerations

---

[4] Inner City also raises other arguments with respect to this Court's subject matter jurisdiction. (Defs. Mem. at 14-17.) These arguments, however, do not relate to the federal claims plaintiff asserted against Inner City. Because I decline to exercise pendent jurisdiction over plaintiff's state law claims for the reasons explained below and because this Memorandum and Order involves only the claims against Inner City, I need not address these arguments at this time.

9

require that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (Def. Mem. at 15.) But here, unlike in Chan, plaintiff is not asserting claims on behalf of the corporation. Rather, he is asserting claims for relief under RICO and federal securities laws against the corporation that he alleges wronged him as a shareholder. He is not seeking to redress injuries to the corporation that the corporation itself could pursue in its own name.

PLAINTIFF'S FEDERAL CLAIMS ARE DISMISSED FOR FAILURE TO STATE A CLAIM

    I.        Section 10(b), Rule 10b-5 and Section 17 Claims

"To state a claim under § 10(b) and Rule 10b-5, plaintiffs must allege that [a defendant] '(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 153 (2d Cir. 2007) (quoting In re IBM Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)). An omission or misstatement is material if a reasonable investor would view its disclosure as "significantly alter[ing] the 'total mix' of information . . . available." TSC Indust. v. Northway, Inc., 426 U.S. 438, 449 (1976). Section 17 of the Securities Act of 1933 prohibits fraudulent interstate transactions and has similar requirements to section 10(b) and Rule 10b-5. See e.g., Republic Tech. Fund, Inc. v. Lionel Corp., 483 F.2d 540, 545, 551 (2d Cir. 1973) (analyzing Rule 10b-5 and section 17 claims together and noting that it must determine whether defendant made any material misstatements or omissions); U.S. S.E.C. v. Czarnik, 2010 WL 4860678, at *3 (S.D.N.Y. Nov. 29, 2010) ("The same elements required to establish a section 10(b) and a Rule 10b-5 violation suffice to establish a violation under sections 17(a)(1) – (3),

with the exception that scienter is not required for the Commission to enjoin violations under subsections (a)(2) or (a)(3).").

Here, the Amended Complaint fails to allege facts to support a violation of Rule 10b-5, section 10(b) or section 17. It alleges that "[t]he fraudulent conduct involved in the proposed transfer of debt and equity to Fortress is in violation of section 17 of the Securities Act of 1933 and rule 10(b)5 of the SEC under the Securities Act of 1934." (Am. Compl. ¶ 11.) Plaintiff's affidavit submitted in opposition to Inner City's motion to dismiss asserts that the Chairman of Inner City has "refused to provide information about . . . what . . . happened to the $230 million borrowed from Goldman Sachs and GE Credit," among other things. (Pl. Aff. ¶ 3.) Plaintiff asserts that this omission constitutes a violation of Rule 10b-5 and Section 10(b) of the Securities Exchange Act of 1934. (Pl. Aff. ¶ 4.) Construing the facts set forth in plaintiff's affidavit as though they had been alleged in the Amended Complaint, plaintiff has failed to allege facts to state a plausible claim for relief. Plaintiff has not alleged fraud with particularity, sufficient to satisfy Rule 9(b), Fed. R. Civ. P., nor has plaintiff alleged facts to support a conclusion that a material omission was made in connection with the purchase or sale of securities. Plaintiff has also failed to allege that he relied on this omission, which proximately caused him injury. Accordingly, these claims are dismissed.

II.     RICO Claims

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . ." 18 U.S.C. § 1964(c). In order to state a claim for civil remedies under RICO, a plaintiff must allege both that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, and that he was "injured in his business or property <u>by reason of</u> a violation of section 1962." 18 U.S.C. § 1964(c)

(emphasis added).  Section 1962 contains four subsections that set forth the criminal activities prohibited under RICO.  See Hemi Group, LLC v. City of New York, N.Y., 130 S. Ct. 983, 987 (2010).  In order to state a violation of any of these subsections, a plaintiff must plausibly allege that a defendant conspired to engage in or did engage in a pattern of racketeering.  18 U.S.C. § 1962.  Section 1961(1) defines "racketeering activity" to include a number of predicate acts, including the four at issue in this case—mail fraud, wire fraud, fraud in the sale of securities and the interstate transport of stolen property.  18 U.S.C. § 1961(1); Burdick v. American Exp. Co., 865 F.2d 527, 529 (2d Cir. 1989) (referring to mail fraud and securities fraud as predicate acts).  In a claim asserted under RICO, a plaintiff lacks statutory standing to pursue a claim if the plaintiff "cannot show that defendants' alleged violations of § 1962 proximately caused their injuries . . . ."  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 122 (2d Cir. 2003).

        Here, plaintiff has failed to allege facts to support a RICO claim.  Plaintiff alleges that Inner City operated its enterprise "in large part for the purpose of enriching the family of Percy E. Sutton through transactions . . . which violated state and federal laws, including 18 U.S.C. [§] 1341 (mail fraud), 18 U.S.C. [§] 1344 (bank fraud) and 18 U.S.C. [§] 2314 (interstate transportation of stolen property)."  (Am. Compl. ¶ 8.)  The Amended Complaint may also be construed to allege securities fraud as a predicate act.  But plaintiff does not allege any fraud—wire, mail, bank or securities—with the particularity required by Rule 9(b), Fed. R. Civ. P.  See e.g., Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (Rule 9(b) applies to RICO predicate act of mail and wire fraud).  He does not plausibly allege the nature of the stolen property that was allegedly transported across state lines.  Because plaintiff has failed to allege facts to support a predicate act, plaintiff's RICO claims are dismissed.  See Commercial Cleaning Services, L.L.C. v. Colin Service Sys., Inc., 271 F.3d 374, 387 (2d Cir. 2001)

(dismissing RICO claim where plaintiff failed to plead the elements of the alleged predicate offense).

    III.    FCC Violation

To the extent, if any, plaintiff is asserting a federal claim by alleging that Inner City violated "the licensing requirements of the FCC" by allowing Goldman Sachs and General Electric to "own[ ] the entire equity interest of [Inner City]," this claim is dismissed for failure to satisfy the Twombly pleading standard.  See Twombly, 550 U.S. at 555.  No facts are alleged that would plausibly state a claim for relief.

PLAINTIFF'S STATE LAW CLAIMS

This Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.  Section 1367 of title 28 of the United States Code governs the exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c)(3) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  Although section 1367(c)(3) is couched in permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless."  Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity – the 'Cohill

factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carneigie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7. Here, plaintiff's federal claims have been dismissed and none of the Cohill factors supports the exercise of supplemental jurisdiction over plaintiff's remaining claims. I therefore decline to exercise supplemental jurisdiction over plaintiff's proposed state-law claims and dismiss them without prejudice.

CONCLUSION

For the reasons explained above, defendants' motion to dismiss is granted insofar as the claims against Inner City are dismissed. (Docket # 16.) The bankruptcy stay applies to Inner City Media and Broadcast Holdings. The Clerk is directed to administratively close the case subject to an application to reopen in the event the bankruptcy stay is lifted.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 28, 2011